## No. 9706.

In re Application of The Denver, Boulder & Western Railroad Company to cease operation.

THE UP-TO-DATE MINING CO., ET AL. *v.* THE PUBLIC UTILITIES COMMISSION.

Decided May 6, 1920.   Rehearing denied Jan. 10, 1921.

Proceedings before the Public Utilities Commission involving the cessation of service by a railroad company.

Order permitting the company to dismantle its road.

*Order Vacated with. Directions.*

1. RAILROADS—*Dismantling—Public Utilities Commission.*   An order of the public utilities commission for the dismantling of a railroad should be made only when it is evident that it is justified in fairness both to the public and the investors, and only when it appears that the management of the road has in the utmost good faith made every reasonable effort to increase

the earnings of the road, has managed it economically and that the public will not properly support it.

*Writ of Review to the Public Utilities Commission.*

Mr. J. R. WOLFF, Mr. HORACE N. HAWKINS, for plaintiffs in error.

Messrs. BARDWELL, HECOX, McCOMB & STRONG, for defendant in error.

MR. JUSTICE TELLER delivered the opinion of the court.

NOVEMBER 24, 1917, the above named railroad company filed its application before the said commission for leave to discontinue service, dismantle its property and dispose of the same. A short time prior to said application, the commission had granted the railroad company's request for authority to increase its rates. On December 28, 1917, the said railroad, with other railroads of the country, passed under the control of the federal government. On June 25, 1918, after the increased rates went into effect, freight rates on roads under federal control were increased approximately twenty-five per cent over the rates then in force.

On May 27, 1919, on application of the railroad company, the cause initiated by the application of November 24, 1917 was reopened. The plaintiffs in error, protestants in the original proceeding, filed their respective protests with the commission denying the allegations of the railroad company to the effect that the road could not be operated so as to pay operating expenses and taxes; and alleging that the said company had not given a fair trial to the increased rates theretofore granted by the commission. They alleged further that the increase of twenty-five per cent in rates made them prohibitive as to a large volume of traffic; that the test, covering in part the winter months, in which the business of the said company was always at the lowest ebb, was not sufficient to determine the question at issue. It was also alleged that because the federal government discouraged travel in 1918, the railroad company was deprived

of one of its chief sources of revenue, as it normally received considerable income from tourist travel, the road being one of great scenic beauty, and widely advertised as such. The protestants further allege that the owners of the company have failed to make a *bona fide* effort to increase and develop the business of the road; because the owners wanted to dismantle it while rails, etc., were in great demand; also, that because of the abnormal conditions due to the late war, all railroad revenues have been greatly decreased, and that if the said railroad be well managed, and a proper schedule of rates be established, it could be put on a paying basis.

The only witness on behalf of the railroad company was its manager. His testimony showed a considerable deficit for the period under consideration. The protestants introduced evidence to the effect that the twenty-five per cent increase of rates resulted directly in the loss of over $4,000.00 freight per year from one mine, and a general reduction in ore shipments; that the railroad company had failed to extend its terminal facilities at Nederland, which failure resulted in the loss of large revenue from freight and passenger traffic, and that the manager had so antagonized shippers that many refused to ship by the railroad, preferring to ship by wagon or truck.

July 23, 1919, the commission granted permission to the railroad to discontinue its service September 15, 1919. Said order was subsequently modified and permission granted to abandon service August 6, 1919. Motion by the protestants for a rehearing having been denied, the protestants bring the cause here for review.

The protestants rely upon the holding of the commission, upon the first hearing on the application of November 24, 1917, which is as follows:

"It is the duty of the applicant railroad to produce testimony before this Commission, prior to the withdrawal of its property from the public service, showing that after a fair trial, under economical management, the railroad company cannot pay its operating expenses under rates now

in force and effect, or under additional increases of rates commensurate with the value of the service, if permitted by the Commission."

It is objected that the railroad company has not produced the evidence required by this rule. We think the objection is well taken. There is no direct evidence that the road under normal conditions might not earn enough revenue to justify its continued operation. The manager testified that it was uncertain to what extent the revenues might be increased; that the future alone could determine the question. The great preponderance of the evidence was to the effect that under economical management, the business could be considerably increased, and that, with a return to prewar conditions, the road would make much larger earnings. It will be observed that the test of the road's earning power was made during a period admittedly not normal. What the commission finds to be a prohibitive rate was enforced during a greater part of the time; passenger travel was discouraged and very greatly reduced; and the period was one in which many railroads were having great difficulty in making any return on the investment therein. The finding, then, that a fair trial of the rates allowed by the commission had been made, is not supported by the evidence. It is clear, beyond a possibility of a doubt, that under the circumstances shown in evidence there was no fair test of the road's earning abilities under normal conditions. It appears that the commission departed from its own rule, and on a showing of earnings in a period of general railway depression, came to the conclusion that the road could not earn its expenses.

The commission very properly recognizes that to dismantle the road is not a light matter. An order for dismantling should be made only when it is evident that it is justified, in fairness both to the public and the investors. In other words, it should be made only when it appears that the management of the road has, in the utmost good faith, made every reasonable effort to increase the earnings of the road, and has managed the same economically; and

that the public will not properly support it.  Under such circumstances, the public has no cause to complain of an order for dismantling.  Until that condition has been fulfilled, however, the public interests prohibit the making of such an order.  We are, therefore, of the opinion that the commission did not regularly pursue its authority in the making of said order.  It is, therefore, vacated and set aside; with directions to the commission to enter an order requiring the road to be operated, and to make a fair test of its ability to earn the necessary income to justify its further operation.

MR. CHIEF JUSTICE GARRIGUES and MR. JUSTICE BURKE concur.